UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

PAULA CAVANAUGH, on behalf of
J.M.C.,

                          Plaintiff,

          V.

MICHAEL J. ASTRUE, as Commissioner of the
Social Security Administration,

                          Defendant.

───────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

08-CV-637
(LEK/VEB)

## I. INTRODUCTION

In October of 2004, Plaintiff Paula Cavanaugh filed an application for Supplemental

Security Income ("SSI") benefits under the Social Security Act on behalf of her son, J.M.C..

("Claimant").[1]   The application was denied by the Commissioner of Social Security in

February of 2005.

Plaintiff, through her attorney, Peter Antonowicz, Esq., commenced this action on

June 18, 2008, by filing a Complaint in the United States District Court for the Northern

District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's

denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 16, 2009, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

───────────────────────

[1]Claimant is a minor.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil
Procedure, he will be referred to as "Claimant" or by his initials in this Report and Recommendation.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff is the mother and legal guardian of Claimant, a minor child.  On October 7, 2004, Plaintiff filed an application for SSI benefits on Claimant's behalf. (T at 108-111).[2]  The application was denied on February 10, 2005. (T at 42, 57-60).  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (T at 42, 61).   An initial hearing was held on October 18, 2005 in Utica, New York before ALJ Gordon Mahley. Plaintiff, represented by counsel, appeared and testified at the hearing.  (T at 42).

On January 19, 2006, ALJ Mahley issued a written decision denying the application for SSI benefits.  (T at 42-50).   Plaintiff appealed to the Appeals Council, which remanded the case for further hearings on September 8, 2006.  (T at 85-88).  Specifically, the Appeals Council directed the ALJ to consider additional medical evidence.  (T at 19).

In February 2006, before the hearing on remand, Plaintiff submitted a second application for benefits on behalf of Claimant.  That application was consolidated with the original application for resolution via the second hearing.  (T at 19).  On December 11, 2007, a second hearing was held in Utica, New York before ALJ Robert Gale.  (T at 435). Plaintiff and Claimant, represented by counsel, appeared and testified. (T at 435, 437, 456). On December 28, 2007, ALJ Gale issued a written decision denying the application for SSI benefits.  (T at 19-33). ALJ Gale's decision became the Commissioner's final decision on May 29, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 8-11).

Plaintiff, acting on Claimant's behalf, commenced this action on June 18, 2008.

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7)

(Docket No. 1).  Plaintiff filed a supporting Brief on April 6, 2009. (Docket No. 12).  The Commissioner filed a Brief in opposition on June 24, 2009. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that this case be remanded to the Commissioner for calculation of benefits.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful

4

activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify, as medically or functionally equivalent to a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

5

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.     Analysis**

6

### 1.    Commissioner's Decision

The ALJ noted that Claimant was born on August 18, 2004, and thus was a "preschooler" pursuant to 20 CFR § 416.926a(g)(2) on the date the application for benefits was determined. (T at 22).  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 22).  He further determined that Claimant suffers from the following severe impairments pursuant to 20 CFR § 416.924 (c): seizure disorder, asthma, and language delay.  (T at 22).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  (T at 26).

In addition, the ALJ concluded that Claimant did not have an impairment or combination of impairments that functionally equals the Listings. (T at 26).  As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for himself; and (6) less than marked limitation with regard to health and physical well-being. (T at 27--33).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application was filed.  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 8-11)

### 2.    Plaintiff's Arguments

Plaintiff challenges the ALJ's conclusion that Claimant's impairments were not functionally equivalent to a listed impairment.  Plaintiff generally asserts that the ALJ gave insufficient weight to the opinions of Claimant's speech/language therapist and occupational therapist.  Plaintiff argues that, upon a proper weighing of the evidence, the ALJ would have found that Claimant's impairments caused him to have a marked limitation in at least three of the domains discussed in 20 C.F.R. §416.926a.  Plaintiff does not specify the three domains to which she is referring.  As such, this Court will evaluate the ALJ's findings as to all six (6) domains.

### 1.     Acquiring & Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information he has learned. 20 C.F.R. § 416.926a(g).

For older infants and toddlers (age 1 to attainment of age 3). At this age, when a child plays, he or she should learn how objects go together in different ways and should learn that by pretending, his or her actions can represent real things. The child should refer to himself/herself and items in the environment by pointing and eventually by naming. The child should form concepts and solve simple problems through purposeful experimentation (e.g., taking toys apart), imitation, constructive play (e.g., building with blocks), and pretend play activities. The child should begin to respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions. 20 C.F.R. § 416.926a(g)(2)(ii).

For a pre-school child (age 3 to attainment of age 6), the ability to acquire and use information should manifest itself in the following abilities: listening to stories, rhyming

8

words, matching letters, counting, sorting shapes, and building with blocks, painting, coloring, copying shapes, using scissors, using words to ask questions, giving answers, following directions, describing things, explaining oneself, and telling stories. 20 C.F.R. § 416.926a(g)(2)(iii).

In May 2007, Claimant's speech and language therapist, Debra Cox-Warren, opined that Claimant had a "serious" problem comprehending oral instructions, understanding school and content vocabulary, and recalling and applying previously learned material. (T at 399). She further indicated that Claimant had a "very serious" problem learning new material. (T at 399). The therapist noted that Claimant has a vocabulary of less than fifty (50) words and uses little to no language with his family. (T at 399).

Also in May 2007, Claimant's occupational therapist indicated that Claimant had an "obvious" problem comprehending oral instructions, understanding school and content vocabulary, and recalling and applying previously learned material. (T at 407). The occupational therapist further noted a "serious" problem providing organized oral explanations and adequate descriptions and learning new material. (T at 407). The therapist indicated that Claimant requires "moderate structure to attend to activities within a closed environment." (T at 407).

The ALJ concluded that Claimant had less than marked limitation in this domain. (T at 28). The ALJ referenced a consultative examination performed in May 2006 by Patricia Munski, M.A., a speech-language pathologist, which indicated that Claimant's receptive and expressive language delays were "mild." (T at 371). Testing indicated that Claimant's speech was at the 1 year, 3-month level (Claimant was 1 year and 9 months old at the time).

9

The ALJ further noted that his own "informal observations" of Claimant at the hearing indicated age-appropriate functioning.  In particular, the ALJ explained that his questioning "during the hearing itself indicated that this child is a very active child, with some difficulty in this domain but he was able to identify colors appropriately; draw, understand my questions and responded appropriately." (T at 28).

The ALJ also referenced the consultative report prepared by Kalyani Ganesh, M.D., in which Dr. Ganesh opined that Claimant's "activities appear mildly to moderately delayed." (T at 364).  In addition, the ALJ noted a June 2007 health assessment, which indicated that Claimant was able to "verbalize when he wants to leave the room." (T at 421).  The ALJ further pointed to a reference in the report to Claimant's ability to behave in an age-appropriate manner. (T at 421).

This Court finds that the ALJ's assessment with regard to this domain was not supported by substantial evidence.

First, the ALJ did not adequately address the assessments provided by Claimant's therapists.  As noted above, Ms. Cox-Warren (Claimant's speech therapist) noted several "very serious" and "serious" problems in this domain. (T at 399).  Rather than using words to ask questions and following directions, as one would expect from a preschooler, 20 C.F.R. § 416.926a(g)(2)(iii), Claimant uses little to no language, does not follow one (1) step directions, and "usually cries, throws tantrums, or grunts to communicate that he needs something." (T at 399).

In his general review of the evidence, the ALJ references Ms. Cox-Warren's evaluation and indicates that her opinions are "granted considerable weight . . . as they pertain to her area of expertise," which he describes as "language remediation." (T at 25).

10

However, when actually addressing this domain, the ALJ inexplicably makes no meaningful attempt to reconcile his finding of less than marked limitation with Ms. Cox-Warren's description of significant delays and substantial limitations, which include issues related to speech. (T at 28).

Moreover, Ms. Cox-Warren's observations were entitled to some consideration even when those assessments were not directly related to language remediation.  As a trained professional who interacted with Claimant several times a week over an extended period, her observations are first-hand, third-party evidence of Claimant's limitations and capabilities.  Thus, even when Ms. Cox-Warren's observations fell outside of her field of expertise, strictly speaking, those observations were entitled to some weight and could not simply be ignored by the ALJ.

Although opinions from therapists are not considered "acceptable medical sources," such opinions are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); see also Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source").  "Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician." Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009).

11

Second, the ALJ credits the briefly-stated assessment of Ms. Munski, a consultative examiner, to the effect that Claimant's delays were "mild to moderate."  However, the ALJ made no attempt to reconcile this assessment (which came from a one-time consultative exam conducted when Claimant was less than 2 years old) with the much more severe assessment offered by Ms. Cox-Warren, who had been treating Claimant two to three times per week for the better part of a year and a half. (T at 397).  The ALJ also selectively relies on Munski's conclusion of mild to moderate delays, without addressing her findings that, for example, Claimant was unable to identify familiar objects from a group or indicate body parts on himself (T at 370), activities that a child of his age would be expected to perform. See 20 C.F.R. § 416.926a(g)(2)(ii).

Third, the ALJ selectively quotes from the report prepared by Claimant's occupational therapist, Minowsha Bari, noting her observation that Claimant requires "moderate structure to attend to activities within a closed environment," without addressing her assessment that Claimant had a serious problem learning new material and providing organized oral explanations and adequate descriptions. (T at 407).

 Moreover, the fact that Claimant required moderate structure even within a closed environment is actually suggestive of greater, rather than lesser, limitation.  The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No.

00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002).[4]

Earlier in his decision, the ALJ noted that Bari's report was given the same weight as that given to Ms. Cox-Warren's report, which was "considerable." (T at 25). However, the ALJ then suggested that both therapists' opinions might be "overstated," offering the following observation: "one questions precisely what it means to remark on a three year old child's needing moderate 'structure' and 'cueing' to attend to tasks, as if this were somehow abnormal or otherwise highly remarkable for an infant." (T at 25).

This statement is problematic in several respects. A three-year old child is considered a preschooler, rather than an infant, under the applicable Regulations. 20 C.F.R. § 416.926a. Further, the therapists, using forms prepared by the Social Security Administration, were asked to compare Claimant's functioning "to that of same-aged children who do not have impairments." (T at 397, 406). The ALJ appears to have assumed that the therapists did not follow these instructions and accordingly felt at liberty to substitute his lay opinion concerning a typical three-year old's capabilities. This was unnecessary and improper, as the Regulations define the types of activities that a preschooler should be able to perform. See 20 C.F.R. § 416.926a(g)(2)(iii). The record evidence demonstrated numerous severe limitations with regard to Claimant's ability to

---

[4]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

13

perform such tasks.

Fourth, the ALJ's reference to the "latest report" as evidence that Claimant is able to verbalize and can behave age-appropriately (T at 28) appears to be based on a misreading of the report.  In fact, the report, a Health Assessment and Treatment Plan prepared by the Community Health and Behavioral Services Department, indicates that Claimant *cannot* adequately verbalize or behave age-appropriately and should not be discharged from supportive services until those goals are reached. (T at 421, 429).

Lastly, this Court recognizes that the ALJ's credibility determination is generally entitled to deference in light of his ability to observe the claimant in person.  See Scandura v. Astrue, No. 07-CV-5098, 2009 WL 648611, at *9 (E.D.N.Y. Mar. 10, 2009).  However, that determination is entitled to less deference where, as here, the ALJ substituted his own judgment for that of Claimant's treating providers without providing an adequate explanation for crediting his own, brief observations and his personal lay opinions over the assessments of professionals who have interacted with the Claimant several times a week over an extended period.

Accordingly, this Court finds that the ALJ's conclusion that Claimant had a less than marked limitation with regard to this domain was not supported by substantial evidence.

### 2.    Attending and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well he can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

Older infants and toddlers should be able to attend to things that interest them and

14

have adequate attention to complete some tasks independently. A toddler should demonstrate sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on clothes.  20 C.F.R. § 416.926a(h)(2)(ii).

A preschooler is expected to pay attention when spoken to directly, sustain attention to play and learning activities, and concentrate on activities like putting puzzles together or completing art projects, focus long enough to do many more things independently, such as getting clothes together and dressing, feeding, or putting away toys. A preschooler should usually be able to wait his or her turn and to change activity when a caregiver or teacher says it is time to do something else. 20 C.F.R. §416.926a (h)(2)(iii).

Ms. Cox-Warren assessed the following limitations with regard to this domain: "very serious" problems focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out single step or multi-step instructions, and waiting to take turns; a "serious" problem paying attention when spoken to directly, sustaining attention during play/sports activities, and changing from one activity to another without being disruptive. (T at 398).  Ms. Bari noted serious problems in nearly all of the same areas. (T at 408).

Claimant's mother testified that he occupied himself playing with toys, but could not sit for more than a minute or two while being read a story. (T at 444).

The ALJ concluded that Claimant has less than marked limitation in this domain. The ALJ's conclusion is supported by a single paragraph in the decision, in which the ALJ notes that Claimant "was very active during the hearing but did act with restraint while sitting on his mother's lap: for example, he did not fuss with a nearby computer screen and keyboard and attended appropriately to drawing a picture with pen on paper." (T at 29).

15

In addition to his own lay observations from the single, short hearing, the ALJ further cites Ms. Munski's observation that Claimant was able to follow and understand simple directions and instructions. (T at 371).  This observation was made during Dr. Munski's consultative examination of Claimant.  The ALJ also referenced Ms. Bari's assessment that Claimant requires "moderate cueing" to attend to tasks. (T at 408).

This Court finds that the ALJ's assessment is not supported by substantial evidence. First, the ALJ selectively quotes from Ms. Munski's consultative report, in which she also noted that Clamant's "attention to tasks was *extremely limited* and required redirection." (T at 369)(emphasis added).  Ms. Munski further indicated that Claimant was "very active and frequently was running out of the examination room." (T at 369).  Further, the ALJ, as with the previously-discussed domain, chose to credit his own lay observations of the Claimant from the hearing over the assessments of professionals who had treated Claimant frequently over the course of an extended period of time.  Ms. Cox-Warren's report details extremely severe difficulties in this area.  The ALJ casts aside that professional assessment (without detailed discussion) based upon his brief observations of Claimant's behavior during the hearing and (apparently) his personal opinion as to the typical behavior of a three-year old.  Even if such a decision might be reasonable under some conceivable circumstances, an ALJ would have to offer detailed support and a complete explanation for such a finding.  No such support is found in this ALJ's decision and the Court does not believe such support can be found on rehearing.

Accordingly, this Court finds that the ALJ's conclusion that Claimant had a less than marked limitation with regard to this domain was not supported by substantial evidence.

### 3. Interacting and Relating

In this domain, the Commissioner considers the child's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

An older infant or toddler should be able to express emotions and respond to the feelings of others.  The child should begin initiating and maintaining interactions with adults, but also show interest in, then play alongside, and eventually interact with other children their age. The child is expected be able to spontaneously communicate wishes or needs, first by using gestures, and eventually by speaking words clearly enough that people who know them can understand what they are saying most of the time.  20 C.F.R. § 416.926a(i)(2)(ii).

With regard to this domain, a preschool age child is expected to socialize with children as well as adults, begin to prefer playmates his or her own age and start to develop friendships with children who are his or her age, use words instead of actions to express thoughts and feeling, be able to share, show affection, and offer to help.  The child should be able to relate to caregivers with increasing independence, choose friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. The preschooler is expected to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what he or she is saying most of the time. 20 C.F.R. § 416.926a(i)(2)(iii).

The ALJ concluded that Claimant had less than marked limitation in interacting and relating with others.  (T at 30).  In support of this finding, the ALJ noted that, according to

17

Claimant's mother, he has attended school on a daily basis without any reports of major discipline problems or suspensions. (T at 440-41).  Ms. Bari, Claimant's occupational therapist, declined to express an opinion as to this domain, noting that she had primarily worked with Claimant on a 1:1 basis. (T at 409). The ALJ cited this in support of his conclusion, noting that "no opinion on this domain was indiated [*sic*] by the occupational therapist who saw him two times a week for a year and a half." (T at 30).

This Court finds that the ALJ's conclusion was not supported by substantial evidence.  As noted above, the ALJ elected to rely upon Ms. Bari's decision not to evaluate Claimant's level of functioning as to this domain in support of his determination, noting that she interacted with Claimant frequently over an extended period. However, Ms. Cox-Warren interacted with Claimant on an even more frequent basis (3x a week vs. 2x) during the same period.  Without explanation, the ALJ decided to cite Ms. Bari's lack of findings with respect to this domain, while ignoring Ms. Cox-Warren's assessment.

Ms. Cox-Warren indicated that Claimant had a "very serious" problem relating experiences and telling stories, using language appropriate to the situation and listener, taking turns in conversation, interpreting the meaning of facial expression, body language, hints, and sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (T at 401).  The ALJ's failure to address these findings is particularly troubling as many of them related to Claimant's ability to relate to others through speech, *i.e.* the area of language remediation where Ms. Cox-Warren had her professional training.  Further, Ms. Cox-Warren noted a "serious" problem playing cooperatively with others, making and keeping friends, expressing anger appropriately, and respecting/obeying adults in authority. (T at 401).  In particular, she referenced Claimant's

18

fits of temper, tendency to bite, and the need for behavior modification throughout therapy sessions. (T at 401).

A Community Health and Behavioral Service Social Intake History noted that Claimant was "[m]ean to others" and prone to temper outbursts and head banging. (T at 424). Claimant's mother testified that he is "very aggressive" with his younger brothers and frequently throws toys or other objects in anger. (T at 451-52).

Although the fact that Claimant had not been suspended from school was relevant to the assessment of his limitations as to this domain, his level of function in the controlled educational environment had to be weighed along with his functioning outside of that structured setting. The ALJ's selective reliance on one therapist's decision not to make findings while essentially ignoring the other therapist's definitive assessment of serious limitations was improper and a review of the record does not provide substantial evidence for the ALJ's ultimate conclusion. See Shaw v. Chater, 221 F.3d 126, 135 (2d Cir.2000) ("This 'pick and choose' approach to reviewing the evidence undermines the court's confidence in the ALJ's determination.").

### 4.    Moving about and Manipulating Objects

In this domain, the Commissioner must consider the child's ability to "move [his or her] body from one place to another and how [they] move and manipulate things." 20 C.F.R. § 416.926a(j).

The Regulations provide the following expectations for older infants and toddlers:

At this age, you should begin to explore actively a wide area of your physical environment, using your body with steadily increasing control and independence from others. You should begin to walk and run without assistance, and climb with increasing skill. You should frequently try to manipulate small objects and to use your hands to do or get something that you want or need. Your improved motor

19

skills should enable you to play with small blocks, scribble with crayons, and feed yourself.

20 C.F.R. §416.926a(j)(2)(ii).

A preschooler is expected to walk and run with ease, climb stairs and playground equipment with little supervision, complete puzzles easily, string beads, and build with an assortment of blocks. The child should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners.  20 C.F.R. §416.926a(j)(2)(iii).

The ALJ concluded that Claimant had "no limitation" in this domain. (T at 31). The ALJ's assessment was based upon the answers provided by Claimant's mother to a series of questions posed at the hearing by the ALJ.  Specifically, Plaintiff answered in the affirmative when the ALJ asked whether Claimant could roll a ball across the floor, throw and catch a ball, ride a tricycle, and run and jump without difficulty. (T at 442-43).

In his earlier recitation of the evidence, the ALJ explained that he was affording "considerable weight" to the assessment of Ms. Bari.  (T at 25).  This was sound, in that Ms. Bari, as Claimant's treating occupational therapist, was well suited to offer opinions concerning his ability to manipulate objects.  However, in formulating his findings with regard to this domain, the ALJ made no attempt to reconcile his "no limitation" determination with Ms. Bari's findings.

Ms. Bari noted a "serious problem" with regard to moving and manipulating things, showing a sense of body's location and movement in space, integrating sensory input with motor output, and planning, remembering, executing controlled motor movements. (T at 410).  Ms. Bari further indicated that Claimant "presents with an under-responsive sensory

20

system constantly seeking sensory input." (T at 410).  She explained that he "presents [with] dyspraxia affecting his motor planning" and resulting in "frequent falls/injuries to self/others." (T at 410).  Ms. Bari found that Claimant "presents with reduced sensory awareness." (T at 410).

Ms. Cox-Warren also noted limitations as to this domain, indicating that Claimant had frequent bruises and injuries due to sensory problems and hyperactivity. (T at 400). At a minimum, the ALJ should have addressed and reconciled the apparent conflict between the testimony of Claimant's mother and the assessments of the therapists. Nevertheless, the brief answers given by the Plaintiff in response to a limited number of questions from the ALJ cannot, even on rehearing, conceivably overcome the clear and definitive assessments of the professional opinions on this point.  Thus, the Court cannot find substantial evidence in support of the ALJ's finding, particularly in light of the contrary evidence in the record.

### 5.    Caring for Self

In this domain, the Commissioner considers the child's ability to "maintain a healthy emotional and physical state, including how well [he or she] gets physical and emotional wants and needs met in appropriate ways; copes with stress and changes in environment; and whether the child can take care of his or her own health, possessions, and living area. 20 C.F.R. § 416.926a(k).

With regard to older infants and toddlers, the Regulations provide as follows:

 As you grow, you should be trying to do more things for yourself that increase your sense of independence and competence in your environment. You might console yourself by carrying a favorite blanket with you everywhere. You should be learning to cooperate with your caregivers when they take care of your physical needs, but you should also want to show what you can do; e.g., pointing to the bathroom, pulling off your coat. You should

be experimenting with your independence by showing some degree of contrariness (e.g., "No! No!") and identity (e.g., hoarding your toys).
20 C.F.R. § 416.926a(k)(2)(ii).

Preschool children are expected to take care of many physical needs independently (e.g., putting on shoes, getting a snack), and should also want to try doing some things that they cannot do fully (e.g., tying shoes, climbing on a chair to reach something up high, taking a bath). The child should also begin to understand how to control behaviors that are harmful (e.g., crossing the street without an adult). 20 C.F.R. § 416.926a(k)(2)(iii).

The ALJ found that Claimant had less than marked limitation as to this domain. The ALJ's reasoning in this regard consists of two sentences: "There was no substantial testimony of real difficulties in this domain except that he likes to jump off the furniture at times. One source report characterized this area as less than markedly impacted. (Exhibit 38F)." (T at 32).

The ALJ's finding is not supported by substantial evidence. First, the "source report" cited by the ALJ is Ms. Cox-Warren's report (which is labeled Exhibit 38F). However, Ms. Cox-Warren's report does not support the ALJ's assessment whatsoever. To the contrary, Ms. Cox-Warren indicated that Claimant had a "very serious" problem handling frustration appropriately, being patient when necessary, and using good judgment regarding personal safety and dangerous circumstances. (T at 402). She noted a "serious" problem appropriately asserting emotional needs, responding appropriately to changes in his own moods, and knowing when to ask for help. (T at 402). Ms. Cox-Warren indicated that Claimant had "poor processing [and] judgment and therefore has frequent accidents and injuries." (T at 402). Ms. Cox-Warren believed that "[s]afety is an issue." (T at 402). In no sense can Ms. Cox-Warren's assessment be read as characterizing Claimant's functioning

in this domain as less than markedly impacted.

Ms. Bari also noted a "very serious" problem identifying and appropriately asserting emotional needs and "obvious" problems in several other areas.  (T at 411).  Claimant's mother testified that he cannot dress himself and endangers his health by jumping from the railing of his bunk bed. (T at 446, 452).

As to this domain, this Court finds that the ALJ's mischaracterization of the evidence and failure to address the substantial limitations noted by Claimant's treating therapists constitutes plain error.  The ALJ's two sentence explanation, supported primarily by citation to a report that actually contradicts the finding, does not satisfy the substantial evidence requirement, nor does the Court believe that additional exploration would reveal substantial evidence in support of the ALJ's findings on this domain.

### 6.    Health and Physical Well-Being

In this domain, the Commissioner considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the claimant's] functioning."  416.926a(*l*).  As to this domain, the ALJ noted Claimant's history of treatment for asthma and seizures.  He found those conditions to be reasonably well controlled.  Overall, the ALJ concluded that Claimant did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.  (T at 33).

For the reasons stated above, this Court finds that the ALJ's conclusion is not supported by substantial evidence.  The ALJ engaged in a "pick and choose" method of analysis, citing the therapists' assessments when it suited his views and then ignoring their assessments when they contradicted his conclusions.  The ALJ appears to have relied far

too heavily on his own brief observations of the Claimant and his lay opinion of the sort of abilities that should be expected of a typical child.  As discussed above, the ALJ was not entitled to substitute his expectations for the determinations set forth in the Regulations. Moreover, it was not proper for the ALJ to simply ignore or largely discount the assessments of treating, trained therapists who had the opportunity to interact and observe Claimant on a frequent basis over an extended period of time.

### 3.    Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

For the reasons stated above, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least two, if not all, of the domains identified under 20 C.F.R. § 416.926a.

Plaintiff's application for benefits on behalf of Claimant has been pending for more than five (5) years.  Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early

24

intervention services, and personal needs assistance for the child." <u>Nieves ex rel. Nieves</u> <u>v. Barnhart</u>, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing <u>Maldonado v. Apfel</u>, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." <u>Molina v. Barnhart</u>, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

For the foregoing, reasons this Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay.  Accordingly, it is recommended that a remand be ordered solely for the calculation of benefits.


## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.


Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 2, 2009

Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 2, 2009

Victor E. Bianchini
United States Magistrate Judge